UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE OCA, INC. SECURITIES AND DERIVATIVE LITIGATION | CIVIL ACTION<br><br>No. 05-2165 R(3)<br><br>JUDGE VANCE<br><br>**THIS DOCUMENT RELATES TO:**<br>**DERIVATIVE CASES ONLY** |

### MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

NOW INTO COURT, through undersigned counsel, comes derivative plaintiffs Eric Nagel, Kevin Koch, Lemon Bay Partners, L.L.P., Daniel Taub and Xiafang Barr, and jointly move this Court to appoint Eric Nagel as Lead Plaintiff in the derivative cases and to appoint Brodsky & Smith, L.L.C. and Federman & Sherwood as Co-Lead Counsel. These derivative plaintiffs also move to appoint Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. as Liaison Counsel. The request is embodied in proposed Case Management Order No. 1 which is attached as Exhibit C to the memorandum submitted contemporaneously. Further, more detailed grounds for the motion are set forth in that memorandum.

- 1 -

52966



WHEREFORE, derivative plaintiffs Eric Nagel, Kevin Koch, Lemon Bay Partners, L.L.P., Daniel Taub and Xiafang Barr pray that their motion be granted for the reasons set forth in the accompanying memorandum.

Respectfully submitted,

By: /s/ Stephen H. Kupperman
Stephen H. Kupperman, 7890
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, LLC
909 Poydras St., Suite 1800
New Orleans, LA 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

**Proposed Liaison Counsel**


Evan J. Smith
Marc L. Ackerman, Esquire
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200
Facsimile (610) 667-9029

William B. Federman
W. Todd Ver Weire
FEDERMAN & SHERWOOD
120 N. Robinson Avenue, Suite 2720
Oklahoma City, OK 73102
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

**Proposed Co-Lead Counsel**


Joe Landry
LANDRY & LAVELLE, LLP
3822 Elysian Fields Avenue
New Orleans, LA 70122-4565
Telephone: (504) 949-1657
Facsimile: (504) 949-1658

52966

Tyler Tomlinson
LIEDERBACH, HAHN, FOY,
VAN BLUNK & THOMPSON, P.C.
892 Second Street Pike
Richboro, PA 18954
Telephone: (215) 322-8300
Facsimile: (215) 322-7646

Brian Felgoise
Law Offices of Brian Felgoise
261 Old York Road
The Pavilion, Suite 423
Jenkintown, PA 19046
Telephone: (215) 886-1900

Marc Henzel
Law Offices of Marc Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, Pa 19004
Telephone: (610) 660-8000
Facsimile: (610) 660-8080

William E. Steffes
Steffes Vingiello & McKenzie, LLC
3029 S. Sherwood Forest Blvd., #100
Baton Rouge, LA 70816
Telephone: (225) 368-1006
Facsimile: (225) 368-0696

Lawrence D. Paskowitz
Paskowitz & Associates
60 E. 42d St., 46th Floor
New York, NY 10165
Telephone: (212) 685-0969
Facsimile: (212) 685-2306

**Additional Plaintiffs' Counsel**

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 12 day of August, 2005.

52966

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE OCA, INC. SECURITIES AND DERIVATIVE LITIGATION | CIVIL ACTION<br><br>No. 05-2165 R(3)<br><br>JUDGE VANCE<br><br>**THIS DOCUMENT RELATES TO:**<br>**DERIVATIVE CASES ONLY** |

**MEMORANDUM OF PLAINTIFFS NAGEL, KOCH, LEMON**
**BAY PARTNERS, TAUB AND BARR IN SUPPORT OF MOTION**
**FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

Plaintiffs Eric Nagel, Kevin Koch, Lemon Bay Partners, L.L.P., Daniel Taub and Xiafang Barr (collectively, "Derivative Plaintiffs") submit this memorandum in support of their motion for appointment of Lead Plaintiff and Lead Counsel in the derivative actions.

52966

## I. INTRODUCTION

Derivative Plaintiffs request that plaintiff Eric Nagel ("Nagel") be appointed Lead Plaintiff and that Brodsky & Smith, LLC and Federman & Sherwood be appointed Co-Lead Counsel. Nagel is a long-time holder of OCA, Inc. ("OCA") stock and, at the time his suit was filed, held twenty thousand (20,000) shares. He has owned a significant number of shares since 2001, and currently holds sixteen thousand (16,000) shares. He has evidenced his standing to bring this action based upon his personally verified statements regarding the quantity and timing of his holdings. *See* Nagel Verification submitted with Complaint, a copy of which is attached hereto as Exhibit A; Nagel Affidavit, attached hereto as Exhibit B. He has the largest financial stake of any derivative plaintiff. In addition, Nagel is a sophisticated investor who is interested in this litigation and willing to serve as Lead Plaintiff. He currently is employed as an institutional bond broker and has worked on Wall Street since 1997. Ex. B ¶ 3. He has his Series 7 and 63 licenses and an accounting degree from Pennsylvania State University, and he was employed by Coopers Lybrand for a year. *Id.* He is well qualified to serve as Lead Plaintiff. Nagel should be selected Lead Plaintiff, and his choice of counsel should be approved as Co-Lead Counsel. *See id.* ¶ 7.

## II. BACKGROUND AND PROCEDURAL HISTORY

On June 10, 2004, Derivative Plaintiff Nagel filed the first of seven shareholder derivative complaints on behalf of nominal defendant OCA. Thereafter, six substantially similar matters were filed, each alleging the same causes of action against the same or similar defendants, and arising out of the same nucleus of operative fact. Counsel for five of the seven derivative actions conferred and agreed to entry of a proposed case management order. Counsel for the Derivative Plaintiffs also attempted to cooperate with counsel for the plaintiffs in the two other federal shareholder derivative matters, *Shkuratkov v. Palmisano* (C.A. 05-2223), and *Bulmer v. Palmisano* (C.A. 05-2421), even

52966

proposing a leadership structure that would include one as a co-lead; that counsel, however, never responded, while the other said he would support the first. The Derivative Plaintiffs thereafter submitted their proposed order by letter dated June 21, 2005, a copy of which is attached as Exhibit C.

At an August 3, 2005 status conference, this Court, with the input of all counsel, determined appointment of a Lead Plaintiff and Lead Counsel for the derivative actions to be appropriate. A briefing schedule was set. This motion and memorandum are submitted in compliance with that schedule.

### III. LEGAL ARGUMENT

#### A. Nagel Should Be Appointed Lead Plaintiff

In *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949), the Supreme Court held that a plaintiff who leads a shareholder's derivative suit occupies a position "of a fiduciary character." *Id.* at 549. "The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id.* Thus, "[p]ursuant to Fed. R. Civ. P. 23.1, a plaintiff bringing a derivative shareholder action must be qualified to serve in a fiduciary capacity as a representative of the class of stockholders, whose interest is dependent upon the representative's adequate and fair prosecution of the action." *Bender v. Parks*, 2004 U.S. Dist. LEXIS 17090, at *11 (D.D.C. Jan. 15, 2004) (citation omitted). The requirement of "fair and adequate" representation is of crucial importance in the context of derivative actions, as the "rights and interests of absent persons may be conclusively determined." *Mayer v. Dev. Corp. of Am.*, 396 F. Supp. 917, 930 (D. Del. 1975). As a result, a lead plaintiff must be of the highest caliber -- one who is capable of discharging his fiduciary office with "diligence, wisdom and integrity."

Shareholder derivative actions differ from most cases in that the plaintiff brings suit against various defendants for the benefit of the company that actually has the right to sue but has not filed a case. "In prosecuting a derivative action, the shareholder acts in the stead of the corporation, as a corporate surrogate seeking vindication of a corporate right...." *Sweet v. Bermingham*, 65 F.R.D. 551, 553 (S.D. N.Y. 1975). Appointment of a lead plaintiff thus ensures the attention of a real "client," with the best interests of the company at heart, which counsel will represent. "'[T]he interests of the unnamed persons ... [must be] closely identified with the interests of the representatives' – *i.e.*, they must be members assured that 'the representatives [will] put up a real fight.'" *Mayer*, 396 F. Supp. at 931. The lead plaintiff is not to be a mere pawn in the hands of counsel, thus effectively permitting prosecution by an unconsulted group acting in name only. *See Joy v. North*, 692 F.2d 880, 887 (2d Cir. 1982) ("there is a danger in authorizing lawyers to bring actions on behalf of unconsulted groups")..

When assessing whether a particular plaintiff is able to act as lead in a shareholder derivative suit, courts often look to the following factors: (1) the economic antagonism between the representative and the class of shareholders represented; (2) the remedy sought by the derivative plaintiff; (3) indications that the plaintiff is not the driving force behind the litigation; (4) the plaintiff's familiarity or unfamiliarity with the litigation; (5) other litigation pending between the plaintiff and the defendant; (6) the relative magnitude between the plaintiff's personal interest as compared to the interest in the derivative action itself; (7) the degree of support the plaintiff is receiving from the shareholders whom the plaintiff purports to represent; (8) the degree of control exercised by the attorneys over the litigation; (9) indications that the plaintiff is not the true party in interest; and, (10) the lack of any personal commitment to the action on the part of the proposed plaintiff. *See, e.g., Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990); *Rothenberg v. Security*

*Management Co.*, 667 F.2d 958, 961 (11th Cir. 1982); *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980). Courts also consider (1) whether the plaintiff held shares during the relevant period; (2) whether the plaintiff is represented by capable counsel; and, (3) whether the plaintiff is subject to unique defenses that would make appointment problematic. *See, e.g., Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005). All factors here favor Nagel.

Nagel's action, like the suits of all five of the Derivative Plaintiffs, was commenced by the filing of a verified complaint. *See* Ex. A. His verification, like the verifications of all five of the Derivative Plaintiffs, was personally signed *before* the filing of any complaint. *See* verifications of other Derivative Plaintiffs, attached *in globo* as Exhibit D. He has demonstrated his desire to prosecute and manage the litigation by taking the time to review the complaint and its allegations before his suit was ever filed, Ex. B ¶¶ 4, 5, and by executing his own verification; he clearly is familiar with and personally committed to his case. *See id.* ¶ 6.

That Nagel is a long-time holder of OCA stock, having held shares for at least four years, is significant. By continuously holding a substantial number of shares since 2001, Nagel will not be subject to any unique defense regarding his standing to bring this action. In light of the indication by OCA counsel at the August conference that the restatement of financials may soon reach back before 2004, Nagel's ownership and standing takes on added significance.[1]

Nagel also has the largest financial stake of any derivative plaintiff. He currently holds sixteen thousand (16,000) shares of OCA. Ex. B ¶ 2; *see TCW Tech Lts. v. Intermedia Communs., Inc.*, 2000 Del. Ch. LEXIS 147, 10-11 (Del. Ch. 2000) (in determining lead plaintiff, due weight should be afforded one with greatest financial interest in outcome). In addition, Nagel is a

sophisticated investor who has worked on Wall Street since 1997, is employed as an institutional bond broker, and understands both the hurdles confronted by companies trying to raise capital and the importance of strong corporate governance which promotes investor confidence and leads to capital market access. Ex. B ¶ 3. He has his Series 7 and 63 licenses and an accounting degree from Pennsylvania State University, and he worked for Coopers Lybrand for a year. *Id.* He is supported by the majority of other plaintiffs who have expressed interest in derivative claims. Nagel is well qualified to serve as Lead Plaintiff.

Appointing Nagel as Lead Plaintiff provides the initial foundation of a leadership structure, and ensures both adequate supervision during all stages of this litigation and a strategy designed to enhance the value of OCA in the long run. Nagel is qualified to serve as Lead Plaintiff, and his motion for that appointment should be granted.

**B.      The Court Should Appoint Nagel's Proposed Leadership Structure.**

The Derivative Plaintiffs, including proposed Lead Plaintiff Nagel, have selected the law firms of Brodsky & Smith, LLC and Federman & Sherwood to serve as Co-Lead Counsel in this litigation. *See* Ex. B ¶ 7. Both Brodsky & Smith, LLC and Federman & Sherwood possess extensive experience in the area of shareholder derivative and complex commercial litigation matters. Both firms have served as lead or co-lead counsel in various derivative shareholder and securities class action suits. *See* firm profiles attached as Exhibits. E and F; *see also* each firm's respective websites at www.brodsky-smith.com and www.federmanlaw.com.

Derivative Plaintiffs' counsel have evidenced their experience and efficiency by filing and serving detailed shareholder derivative complaints. They have organized plaintiffs from five actions

---

[1]    It is not known how long plaintiffs Shkuratkov and Bulmer have owned OCA stock. Their complaints merely state they were shareholders at the "time complained of herein," which are

into a cohesive team to prosecute this litigation. All plaintiffs will receive quality legal representation that will efficiently and aggressively pursue this matter.

Evan J. Smith and Marc L. Ackerman of Brodsky & Smith, LLC have almost 25 years of legal experience between them, all concentrated in various types of litigation. They have extensive experience in complex large scale litigation, representing both plaintiffs and defendants. Recently, Mr. Smith was selected as a 2005 Pennsylvania Rising Star (Under 40), a designation awarded to less than 2.5% of all Pennsylvania attorneys.

In shareholder litigation, Brodsky & Smith, LLC, currently serves as sole lead counsel in *In re Pfizer Shareholder Derivative Litigation*, (S.D.N.Y 05-01688); and *In re Merck & Co. Shareholder Derivative Litigation*, New Jersey Superior Court, Hunterdon County (L-449-04). It also serves as co-lead counsel in *In re Avaya, Inc. Shareholder Derivative Litigation* (D.N.J. 05-2486); *In re Visteon Shareholder Derivative Litigation* (Michigan State Court 2005); *In re Genta Shareholder Derivative Litigation* (D.N.J. 04-3169); *In re Express Scripts Shareholder Derivative Litigation* (Missouri State Court 2004); and, *In re Red Hat, Inc. Shareholder Derivative Litigation*, No. 586-N, Delaware State Court, New Castle County, Chancery Division (Plaintiffs' Committee Member). Brodsky & Smith, LLC, also serves as sole lead counsel in *In re Ryland Group, Inc. Securities Litigation* pending in the Northern District of Texas (3:04-CV-541-B), and as co-lead counsel in *SPX Corporation ERISA Litigation* (W.D.N.C. 04-cv-192). It also serves as liaison counsel in various shareholder derivative, securities and/or ERISA matters.

Brodsky & Smith, LLC also litigates numerous other class action matters outside the context of shareholder litigation. Significant among these is a putative class action on behalf of Delaware County, Pennsylvania and all other local government units in Pennsylvania against several national

---

alleged to be 2004 and early 2005. *See, e.g.,* Shkuratkov Complaint ¶¶ 5-7, 17.

52966

financial institutions, including J.P. Morgan Chase & Co., PNC Bank, Mellon Bank and First Union Corporation, entitled *Delaware County v. First Union Corporation* and *Delaware County v. J.P. Morgan Chase & Co.* (Delaware County Court of Common Pleas, 01-6326 and 01-6882).

In addition to being a Martindale Hubbell "AV" rated law firm, members of Federman & Sherwood have broad experience in shareholder derivative litigation and have represented shareholders in class and derivative actions for over 20 years. In addition to representing plaintiffs, Federman & Sherwood attorneys have over 20 years of trial experience representing plaintiffs and defendants in securities actions as well as in other types of complex litigation. Messrs. Federman, Sherwood and Heggy of Federman & Sherwood have a combined experience of over 70 years of trial and litigation experience (representing both plaintiffs and defendants) in various state and federal courts. The firm has substantial litigation support staff consisting of forensic accountants, paralegals and document clerks. Federman & Sherwood has been appointed Lead (class and derivative) Counsel in numerous securities actions pending in state and federal courts nationwide and has provided highly effective case management and guidance as Lead, Co-Lead and Liaison Counsel in many derivative and other complex litigation.

Federman & Sherwood has been recognized by many courts for the quality of its representation, and has demonstrated its ability to serve in a lead role. It was able to secure significant corporate governance changes in *Chan v. Diamond* (S.D.N.Y. 03-CV-8494 WHP), which the court there described as "sensible reforms that Alloy was unlikely to implement on its own" and that "provide a substantial non-monetary benefit to the company." Further, Federman & Sherwood served as co-lead counsel in the derivative action involving *Computer Associates International, Inc.* (E.D. N.Y. CV-03-4199), in which the significant and far-reaching corporate governance reforms achieved on behalf of shareholders ensured that the company and its officers and directors made

accurate, timely disclosure of information to shareholders and the market. That action also led to the resignation of three financial officers of the company, including its Chief Financial Officer, and a restructuring of the Board of Directors. In fact, several analysts subsequently raised their ratings on the company, specifically referencing the derivative settlement. One news article specifically noted that "the governance issues were key because the monetary part of the [securities action] settlement . . . is considered very small for a company its size." "Shareholders Gain Reforms with Lawsuits," M. Krantz, USA Today, August 27, 2003, attached as Exhibit G.

Further, Federman & Sherwood has demonstrated its ability successfully to prosecute derivative actions when demand futility is an issue. Two recent decisions, *Felker v. Anderson* (W.D. Mo. 04-CV-372) and *Mehlenbacher v. Jitaru* (M.D. Fla. 6:04-CF-1118-ORL-22KRS), demonstrate Federman & Sherwood's ability to overcome motions to dismiss based on demand futility, along with its ability to prosecute available claims seeking corporate governance changes even when no securities fraud case exists.[2]

Barrasso Usdin Kupperman Freeman & Sarver, L.L.C. has built an excellent reputation in every type of complex litigation in state and federal courts, and has significant expertise in shareholder litigation. Its attorneys are of the highest ethical standing, and will serve admirably as Liaison Counsel. Mr. Kupperman of the firm often has served as liaison in complex cases, including, by way of illustration only, *In re Industrial Life Insurance Litigation* (E.D. La. MDL 1371, 1382, 1390, 1391, 1395), *Castano v. American Tobacco Co.* (E.D. La. 94-CV-01044), *Weizman v. Trico Marine Services* (E.D. La. 04-cv-01565), and *Scott v. American Tobacco Co.*

---

[2]   In *Mehlenbacher*, several securities fraud cases initially were filed against the company and its officers. All of the securities cases later were dismissed. Federman & Sherwood nonetheless exhibited its ability and willingness to ensure that valid claims are prosecuted to

-9-

52966

(Civil District Court No. 96-8641). He also has represented parties in numerous other complex class action and derivative disputes, including without limitation *In re Energy Income Funds Litigation* (E.D. La. MDL 888), *In re Energy Growth Funds Litigation* (E.D. La. MDL 867), *Brown v. American Capitol Life Insurance Co.* (E.D. La. 01-cv-02079), *Banks v. New York Life Insurance Co.* (18th J.D.C. No. 30,428), and *Burke v. Cooper/TS Stevedoring* (40th J.D.C. No. 26,392). Mr. Kupperman has almost 30 years litigation and securities action experience, and has been named to the Best Lawyers in America in the field of Business Litigation. A copy of the firm brochure is attached as Exhibit H.

This Court should approve Nagel's selection of Co-Lead Counsel and Liaison Counsel. *See* Ex. B ¶ 7.

## C. The *Shkuratkov* and *Bulmer* Plaintiffs Are Subject To Unique Defenses

The only two derivative plaintiffs who have not joined in this motion are Shkuratkov and Bulmer. They previously filed their own motions seeking to have their attorneys appointed as Lead Counsel. They did not, however, seek to have themselves, or either of them, appointed Lead Plaintiff. They apparently recognize their own lack of qualifications to serve as Lead Plaintiff, and prefer to abdicate control and responsibility for the derivative claims to their lawyers. This position is in direct contradiction to their earlier acknowledgment of the need to appoint Lead Plaintiff. *See* Shkuratkov and Bulmer Responses to Suggestions at 2, filed June 24 and July 5.[3] Moreover, even a change in tack and a belated request to have themselves appointed Lead Plaintiff will not remedy the

---

their fullest, no matter the difficulty, by prosecuting the derivative action despite dismissal of the related securities fraud cases.

[3] The failure to propose Shkuratkov and Bulmer as lead plaintiffs is a red flag that they may not have standing to bring this action. Certainly, if they did not hold OCA stock during the relevant period, they are not suitable to serve as lead plaintiff or to best protect the interests of the company.

deficiencies already revealed -- Shkuratkov and Bulmer are not the driving forces behind their suits, have expressed no significant personal interest or commitment to the litigation, and are content to remit control of the derivative litigation to counsel. They are not appropriate selections as Lead Plaintiff.

Perhaps it is most telling that the original verification for Shkuratkov's suit was signed not by the plaintiff himself, but by his counsel. *See* verification, attached as Exhibit I.[4] This failure of Shkuratkov to execute his own verification raises the obvious questions of his commitment to prosecuting and managing the derivative litigation, his status as a true party in interest, whether he is the motivating factor behind his litigation, his familiarity with his own case, and the degree of control exercised by counsel over the litigation -- all key factors in determining the appointment of Lead Plaintiff.

The only reason given for Shkuratkov's failure to sign was that he was not available in San Diego County (where his counsel apparently resides) on the day of his verification, but no explanation was offered why he could not have signed the verification earlier, or why he could not have signed on that day wherever he may have been located and then faxed, emailed or mailed the verification to counsel. Surely one who is truly committed to serving as a named plaintiff and to diligently prosecuting a case would exert some effort to read his own verification, which is mandated by Rule 23.1, before filing.

In *Goldberg v. Meridor*, 81 F.R.D. 105 (S.D. N.Y. 1979), a case strikingly similar to the present, the court rejected the verification of a derivative complaint by an attorney who had signed the verification allegedly because the plaintiff lived out of state. Plaintiff argued that his out-of-state

---

[4]   The *Bulmer* verification appears to have been signed by plaintiff, who nonetheless was not proposed as Lead Plaintiff.

52966

residency rendered it appropriate for counsel to verify the complaint. *Id.* at 110. When confronted with similar arguments, a minority of courts had allowed counsel to verify where such counsel was substantially more familiar with the subject matter of the complaint. *Id.* The *Goldberg* court, however, disagreed: "[T]he circumstances of this case are not so exceptional that the majority rule should not be applied. Surely the mere fact that the plaintiff resides [out of state] is too slender a basis on which to justify permitting the filing of the complaint without verification of its plaintiff." *Id.* The same reasoning and result should obtain here.

Shkuratkov may attempt to salvage his intended status by arguing that, on August 10, he filed a verification personally executed by him.[5] Yet even this verification does not solve all deficiencies; indeed, it only highlights them.

In this verification, Shkuratkov declares, *inter alia*, that he has "read the Verified Amended Shareholder Derivative Complaint and know[s] the contents thereof." Ex. J. Yet there is no amended derivative complaint. Shkuratkov certainly did not file one. Thus, Shkuratkov has declared "under penalty of perjury" that he has read and knows the contents of a document that does not exist. This personally signed verification does nothing to establish Shkuratkov's familiarity with or personal commitment to the derivative litigation and, to the contrary, reflects his lack of familiarity with his own case.[6]

---

[5] Shkuratkov never provides any reason his verification was not filed close to its alleged date. Perhaps the date on the verification is in error, and should have been more recent. It is only clear that Shkuratkov (1) did not sign any verification until after the Derivative Plaintiffs wrote the Court on June 21 regarding the issue of Lead Plaintiff, and (2) did not file his verification until both (i) weeks after Derivative Plaintiffs brought his failure to the attention of the Court, and (ii) months after his suit had been filed.

[6] That Shkuratkov personally signed a verification only for the amended complaint indicates that he did not read or have input into the original complaint. His verification is not even dated until more than two weeks after filing of his suit.

52966

Shkuratkov's recent verification also states: "Based upon my discussions with and reliance upon my counsel, the Complaint is true and correct to the best of my knowledge, information and belief." Ex. J. This declaration again reflects Shkuratkov's lack of familiarity with the case, and the degree of control exercised by his counsel. His knowledge of the action clearly is confined to that which his counsel told him. A similar situation existed in *Rothenberg v. Security Management Co.*, 667 F.2d 958 (11th Cir. 1982), where the court concluded that the plaintiff did not fairly and adequately represent the shareholders, as is required by Rule 23.1. The plaintiff could not show any personal knowledge concerning a significant portion of the factual basis of the complaint, and any familiarity she had derived largely from conversations with her attorney. The court held that these factors, along with her failure to acquire more than a rudimentary understanding of the case, demonstrated that she could not fairly and adequately represent the plaintiffs in the derivative suit. *Id.* at 962.

Here, as in *Rothenberg*, Shkuratkov has not shown any personal knowledge concerning his complaint, and, by his own admission, any information he has is "[b]ased upon my discussions with and reliance upon my counsel." Ex. J. "A blatant lack of knowledge and commitment on the part of [the plaintiff] as well as total control over the case on the part of her lawyers lead us to conclude that she could not pursue this action as a fair and adequate representative of [the] shareholders." *Mills v. Esmark, Inc.*, 573 F. Supp. 169, 177 (N.D. Ill. 1983). *See also* 7C Wright & Miller, *Federal Practice & Procedure* §1833 (1986) (representation inadequate where plaintiff lacks knowledge of facts and delegates control to counsel). Shkuratkov is not an appropriate Lead Plaintiff.

In stark contrast to Shkuratkov, the record is replete with evidence that Nagel possesses personal knowledge and understanding of not only this case, but the securities industry in general. *See* Exs. A, B. As noted, Nagel is employed as an institutional bond broker, has worked on Wall

Street for almost ten years, holds his Series 7 and 63 licenses and previously worked for Coopers Lybrand. Ex. B ¶ 3. He has an intimate understanding of the events leading to this lawsuit, the intricacies of the claims asserted and the relief requested, and is able to advise his attorneys at every juncture. *See id.* ¶¶ 4, 5. He certainly possesses far too much knowledge of this lawsuit and this industry to be merely an avenue to the courthouse for his attorneys. "As a practical matter, courts prefer plaintiffs who are not primarily concerned with their own unique interests and who are not totally dominated by their lawyers but whose interests align well with the corporation." 4A New York Practice, Commercial Litigation In New York State Courts § 74:29 (2d ed.). Nagel will represent the interests of the corporation and his fellow shareholders, and he should be appointed Lead Plaintiff.

## IV. CONCLUSION

For the reasons set forth above, the Court should appoint Nagel as Lead Plaintiff; Brodsky & Smith and Federman & Sherwood as Co-Lead Counsel; and, Barrasso Usdin Kupperman Freeman & Sarver, L.L.C., as Liaison Counsel. An order substantially similar to that embodied in proposed Case Management Order No. 1 should be entered.

Respectfully submitted,

By: /s/ Stephen H. Kupperman
Stephen H. Kupperman, 7890
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, LLC
909 Poydras St., Suite 1800
New Orleans, LA 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

**Proposed Liaison Counsel**

52966

Evan J. Smith
Marc L. Ackerman, Esquire
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone: (610) 667-6200
Facsimile (610) 667-9029

William B. Federman
W. Todd Ver Weire
FEDERMAN & SHERWOOD
120 N. Robinson Avenue, Suite 2720
Oklahoma City, OK 73102
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

**Proposed Co-Lead Counsel**

Joe Landry
LANDRY & LAVELLE, LLP
3822 Elysian Fields Avenue
New Orleans, LA 70122-4565
Telephone: (504) 949-1657
Facsimile: (504) 949-1658

Tyler Tomlinson
LIEDERBACH, HAHN, FOY,
VAN BLUNK & THOMPSON, P.C.
892 Second Street Pike
Richboro, PA 18954
Telephone: (215) 322-8300
Facsimile: (215) 322-7646

Brian Felgoise
Law Offices of Brian Felgoise
261 Old York Road
The Pavilion, Suite 423
Jenkintown, PA 19046
Telephone: (215) 886-1900

Marc Henzel
Law Offices of Marc Henzel
273 Montgomery Avenue, Suite 202
Bala Cynwyd, Pa 19004
Telephone: (610) 660-8000
Facsimile: (610) 660-8080

William E. Steffes
Steffes Vingiello & McKenzie, LLC
3029 S. Sherwood Forest Blvd., #100
Baton Rouge, LA 70816
Telephone: (225) 368-1006
Facsimile: (225) 368-0696

52966

- 16 -

                                Lawrence D. Paskowitz
                                Paskowitz & Associates
                                60 E. 42d St., 46th Floor
                                New York, NY 10165
                                Telephone: (212) 685-0969
                                Facsimile: (212) 685-2306

                                **Additional Plaintiffs' Counsel**

## CERTIFICATE

I hereby certify that a copy of the above and foregoing has been served upon all known counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this ___12___ day of August, 2005.

SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED