**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2005 AUG 12 P 4: 49
LORETTA G. WHYTE
CLERK

-------------------------------------------x

IN RE OCA, INC. SECURITIES
AND DERIVATIVE LITIGATION

No. 05-2165
Honorable Sarah S. Vance

-------------------------------------------

**This Document Relates To:**
**SECURITIES ACTIONS ONLY**

Section: R(3)

-------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY ROBOTTI & COMPANY ADVISORS LLC FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

Robotti & Company Advisors LLC ("Robotti") respectfully submits this memorandum of law in support of its motion for an Order:

1.      Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)      appointing Robotti as Lead Plaintiff for the following Class: all persons who purchased or otherwise acquired the securities of Orthodontic Centers of America, Inc. ("OCA" or the "Company"), during the period from November 12, 2003 through June 7, 2005, both dates inclusive (the "Class Period"),[1]

(b)      approving the selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and the Law Office of Michael Ponder as Local Counsel for the Class; and

2.      Granting such other relief as the Court may deem just and appropriate.

---

[1] Excluded from the Class are defendants; members of the individual defendant's immediate family; officers, directors, subsidiaries or affiliates of the defendants; any entity in which any excluded person has a controlling interest; and legal representatives, heirs, successors or assigns of any of the foregoing.

_____ Fee_____
_____ Process_____
__X__ Dktd_____
__✓__ CtRmDep_____
_____ Doc. No._____

## **BACKGROUND**

**Factual Allegations**

   This is a securities class action on behalf of public investors who purchased the OCA securities between November 12, 2003 and June 7, 2005, both dates inclusive (the "Class Period"). Named as defendants are OCA, Bartholomew F. Palmisano Sr., and David E. Verret. The case involves a manipulation of financial statements in which, among other acts of deception, defendants knowingly or recklessly misrepresented the Company's earnings and artificially inflated the Company's stock price by improper accounting practices.

   During the Class Period, OCA's statements regarding fiscal year 2004 financial results were materially false and misleading because it improperly accounted for certain revenues. In truth, the Company's earnings were not increasing in the amounts that had been represented, and the Company's reported earnings statements for the interim periods were inflated in violation of Generally Accepted Accounting Principles.

   On June 7, 2005, OCA unexpectedly announced that it was delaying the filing of its annual report; that it intended to restate its quarterly financial statements for 2004; and that it had placed the Company's Chief Operating Officer, Bartholomew E. Palmisano Jr., on administrative leave. The Company admitted that, among other things, it had materially overstated its patient receivables and patient revenue for the first three quarters of 2004.

   In reaction to this news, OCA's stock fell $1.53 per share or almost 38% to close at $2.50 per share, on unusually heavy trading volume.

**Procedural Status**

   On June 7, 2005, the first of 20 actions was filed in the Eastern District of Louisiana under *Santopietro v. OCA, Inc.*, Civil Action No. 05-cv-2165-SSV-DEK, related to the

disclosure of the false financials.  On August 3, 2005, the Court held an initial status conference

in the 20 actions and consolidated all of the actions under the maser file *In re OCA, Inc.*

*Securities and Derivative Litigation*, Master File No. 05-2615, and set a schedule for the filing

and responses to motions for appointment of lead plaintiff in the securities actions.

On August 4, 2005, the Court issued Pretrial Order No. 1 in the consolidated

actions, which memorialized the Court's holdings in open court during the initial status

conference.  *See In re OCA, Inc. Securities and Derivative Litigation*, No. 05-2165, slip op. (E.D.

La. Aug. 3, 2005) (Pretrial Order No. 1).  Pretrial Order No. 1 extended the date for filing

motions to be appointed lead plaintiff in the securities to August 12, 2005.  *Id.*, at 2.

**Proposed Lead Plaintiff**

Robotti & Company Advisors LLC is an investment management firm that

manages individual portfolios on a discretionary basis for its clients.  Robotti applies a patient,

long-term investment approach as a means to achieve its goal of above average returns to its

clients.  Robotti is authorized, by contract, to act on behalf of its clients as agent and attorney-in-

fact with respect to their accounts.  Accordingly, Robotti has discretionary authority over the

decision to purchase or sell securities for the individual portfolios.  Thus, during the Class

Period, Robotti purchased blocs of OCA common stock and allocated the shares among certain

of the individual portfolios.

Specifically, during the Class Period, Robotti purchased 68,050 shares of OCA

common stock in the amount of $440,595.  It sold 2,750 shares during the Class Period and

retained 65,300 shares at the close of the Class Period.  Since the close of the Class Period,

Robotti has not sold any of its 65,300 shares.

3

As attorney-in-fact, Robotti is authorized to litigate this action on behalf of its discretionary accounts, and has filed the instant motion in good faith to increase the value of the accounts for which it purchased OCA common stock during the Class Period.

## ARGUMENT

### ROBOTTI & COMPANY ADVISORS LLC
### SHOULD BE APPOINTED LEAD PLAINTIFFS

Sections 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (I) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(I) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Robotti satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff.

4

A.     **Robotti is Willing to Serve as Class Representative**

On June 7, 2005, counsel in the first filed action against the defendants, referenced above as *Santopietro v. OCA, Inc.*, Civil Action No. 05-cv-2165-SSV-DEK, caused a notice to be published pursuant to Sections 21D(a)(3)(A)(I) of the PSLRA announcing that a securities class action had been filed against the defendants herein, and advising purchasers of OCA securities that they had until August 5, 2005, to file a motion to appointed as Lead Plaintiff. *See* Declaration of Michael E. Ponder in Support of the Memorandum of Law in Support of Robotti & Company Advisors LLC's Motion for Appointment of Lead Plaintiff and Approve of Lead Counsel (the "Ponder Dec."), at Exhibit A. As noted above, the deadline for filing was extended by Pretrial Order No. 1 to August 12, 2005.

**A.      Robotti is Willing to Serve as Class Representative**

On June 7, 2005, counsel in the first filed action against the defendants,

referenced above as *Santopietro v. OCA, Inc.*, Civil Action No. 05-cv-2165-SSV-DEK, caused a

notice to be published pursuant to Sections 21D(a)(3)(A)(I) of the PSLRA announcing that a

securities class action had been filed against the defendants herein, and advising purchasers of

OCA securities that they had until August 5, 2005, to file a motion to appointed as Lead Plaintiff.

*See* Declaration of Michael E. Ponder in Support of the Memorandum of Law in Support of

Robotti & Company Advisors LLC's Motion for Appointment of Lead Plaintiff and Approve of

Lead Counsel (the "Ponder Dec."), at Exhibit A.  As noted above, the deadline for filing was

extended by Pretrial Order No. 1 to August 12, 2005.

Robotti has filed the instant motion pursuant to the Notice and Pretrial Order No.

1, and has attached its Certification attesting that it is willing to serve as representative of the

Class and is willing to provide testimony at deposition and trial, if necessary.  *See* Ponder Dec.,

Exhibit B. Accordingly, Robotti satisfies the first requirement to serve as Lead Plaintiffs for the

Class.

**B.      Robotti has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most

adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in

the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec.

Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

Here, Robotti (1) acquired 68,050 shares of OCA common stock during the Class

Period; (2) has retained 65,300 shares; (3) spent $440,595 in its purchases of OCA shares during

5

the Class Period; and (4) has suffered $318,399 in losses attributable thereto. *See* Ponder Dec.,

Exhibit B.   Robotti's losses were calculated on a Last-In-First-Out basis using a "Net-Net"

methodology. *See Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL

461036, at *5 (N.D. Ill. Aug. 11, 1997) (financial interest may be determined by looking to (1)

the number of shares purchased during the class period; (2) the number of net shares purchased

during the class period; (3) the total net funds expended during the class period; and (4) the

approximate losses suffered); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y.

1998) (same). *Accord In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001); *In*

*re Comdisco Sec. Litig.*, No. 01 C 2110, 2004 U.S. Dist. LEXIS 7230, at *8 (N.D. Ill. Apr. 26,

2004). *See also In re Critical Path, Inc. Sec. Litig.* 156 F. Supp. 2d 1102, 1108 (N.D. Cal.

2001)("The Court considers the most straightforward method for approximation of financial

interest in the recovery sought, but considers that it should be supplemented with in/out losses");

*In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 (D. Va. 2003)(the Court considers

the number of net shares purchased during the class period and the losses incurred by the sales

during the class period).

  Robotti is not aware of any other plaintiff that has suffered larger losses than it

has.  Accordingly, Robotti satisfies the largest financial interest requirement to be appointed as

Lead Plaintiff for the Class.

**C.**   **Robotti Satisfies the Requirements of Fed. R. Civ. P. 23**

  Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must

"otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule

23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that Robotti satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (*citing Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

Robotti fulfills all of the requirements of Rule 23. Robotti shares substantially similar questions of law and fact with the members of the class, and its claims are typical of the members of the class. Robotti and all members of the class allege that defendants violated the Exchange Act by publicly disseminating a series of false and/or misleading statements regarding OCA's financial condition during the Class Period. Robotti, as did all of the member of the Class, purchased OCA common stock during the Class Period at prices artificially inflated by defendants' misrepresentations and omissions, and were damaged upon the disclosure of the

filing of false financials.  These shared claims also satisfy the requirement that the claims of the

representative party be typical of the claims of the Class.

      Thus, the close alignment of interests between the Robotti and other Class

members, as well as the strong desire of the proposed Lead Plaintiff to prosecute these actions on

behalf of the Class, provide ample reasons to grant Robotti's motion to serve as Lead Plaintiff.

**D.  Robotti Will Fairly and Adequately Represent the
    Interests of the Class and is not Subject to Unique Defenses**

      The presumption in favor of appointing Robotti as Lead Plaintiff may be rebutted

only upon proof "by a purported member of the plaintiffs' class" that the presumptively most

adequate plaintiff:

     (aa)   will not fairly and adequately protect the interest of the
            class; or

     (bb)   is subject to unique defenses that render such plaintiff
            incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

      Robotti's ability and desire to fairly and adequately represent the Class has been

discussed in Section C, above.  Robotti is not aware of any unique defenses defendants could

raise against it that would render Robotti inadequate to represent the Class.  Accordingly, Robotti

should be appointed Lead Plaintiff for the Class.

## ROBOTTI'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

      The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel,

subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere

with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Robotti has selected the law firm of Pomerantz Haudek Block Grossman & Gross LLP to serve Lead Counsel and the Law Office of Michael Ponder to serve as Local Counsel. The Pomerantz firm is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the Pomerantz firm resume, attached hereto at Ponder Dec., Exhibit C. As a result of its extensive experience in litigation involving issues similar to those raised in this action, Robotti's counsel has the skill and knowledge which will enable it to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Robotti's selection of Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Robotti respectfully request the Court issue an Order (a) appointing Robotti as Lead Plaintiff of the Class, (b) approving Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and the Law Office of Michael Ponder as Local Counsel for the Class, and (c) granting such other relief as the Court may deem to be just and proper.

Dated: August 12, 2005

Respectfully submitted,

Michael E. Ponder
**LAW OFFICE OF MICHAEL PONDER**
2125 Quail Oak Drive
Baton Rouge, Louisiana 70808
Telephone: (225) 389-7688
Facsimile: (225) 389-5554

9

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**
Stanley M. Grossman
Marc I. Gross
100 Park Avenue
26th Floor
New York, New York  10017
Telephone:  (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
Leigh R. Smoller
One North LaSalle Street
Suite 2225
Chicago, Illinois  60602
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

**Attorneys for Plaintiff**
**Robotti & Company Advisors LLC**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------x

**IN RE OCA, INC. SECURITIES
AND DERIVATIVE LITIGATION**

**No. 05-2165
Honorable Sarah S. Vance**

-----------------------------------------------

**This Document Relates To:
SECURITIES ACTIONS ONLY**

**Section: R(3)**

-----------------------------------------------x

## DECLARATION OF MICHAEL E. PONDER IN SUPPORT OF THE MOTION BY ROBOTTI & COMPANY ADVISORS LLC FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

I, Michael E. Ponder, hereby declare as follows:

1.     I am a member of the firm of the Law Office of Michael Ponder, local counsel on behalf of Robotti & Company Advisors LLC ("Robotti"). I make this Declaration in support of the motion by Robotti for appointment as lead plaintiffs and for approval of their selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and the Law Office of Michael Ponder as Local Counsel for the Shareholder Class.

2.     Attached hereto as Exhibit A is a true and correct copy of the press release published in the first filed action against the defendants in the OCA securities litigation on June 7, 2005.

3.     Attached hereto as Exhibit B is true and correct copy of Robotti's Certification in this Action.

4.     Attached hereto as Exhibit C is a true and correct copy of the firm resume for Pomerantz Haudek Block Grossman & Gross LLP.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 12, 2005, at Baton Rouge, Louisiana.

_Michael E. Ponder_

Michael E. Ponder

## Certificate of Service

I, Patrick V. Dahlstrom, hereby certify that on August 12, 2005, I caused the following documents to be served upon the attached Service List by Federal Express:

(1)      Notice of Motion

(2)      Memorandum of Law in Support of the Motion by Robotti & Company LLC for Appointment of Lead Plaintiff and Approval of Lead Counsel, and

(3)      Declaration of Michael E. Ponder in Support of the Motion by Robotti & Company LLC for Appointment of Lead Plaintiff and Approval of Lead Counsel

Dated: August 12, 2005

Patrick V. Dahlstrom

## SERVICE LIST

for the plaintiffs

Andrew A Lemmon
Lemmon Law Firm
650 Poydras Street
Suite 2335
New Orleans, LA 70130
504-581-5644
Jennifer@lemmonlawfirm.com

Jeffrey C Block
Berman DeValerio Pease Tobacco
  Burt & Pucillo
On Liberty Square
Boston, MA 02109
415-433-3200
jblocj@bermanesq.com

Allan Kanner
Allan Kanner & Associates
701 Camp Street
New Orleans, LA 70130
504-524-5777
c.harang@kanner-law.com

Lewis S Kahn
Kahn Gauthier Law Group
650 Poydras Street
Suite 2150
New Orleans, LA 70130
504-455-1400
Lewis.kahn@lglg.com

Joseph B Landry
Landry & Lavelle
3822 Elysian Fields Avenue
New Orleans, LA 70122-7103
504-949-1657
kkoob@nolalaw.com

Michael E Ponder
Parish Attorney's Office
East Baton Rough Parish
PO Box 1711
Baton Rouge, LA 70821
225-389-3114
mponder@brgov.com

Steven B Murray
Murray Law Firm
LL&E Tower
909 Poydras Street
Suite 2550
New Orleans, LA 70112
504-525-8100
smurray@murray-lawfirm.com

Jeffrey Campisi
Kalpan Fox & Kilsheimer
805 Third Avenue
22nd Floor
New York, NY 10022
212-687-1980
jcampisi@kaplanfox.com

Michael R Allweiss
Lowe, Stein, Hoffman, Allweiss
  & Hauver
701 Poydras Street
Suite 3600
New Orleans, LA 70139-7735
504-581-2450
mallweiss@lshah.com

Lionel Z Glancy
Glancy & Binkow
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
310-310-9150

Marc L Ackerman
Broadsky & Smith
2 Bala Plaza
Suite 602
Bala Cynwyd, PA 19004
610-667-6200

Randall A Smith
Smith & Fawer
201 St Charles Avenue
Suite 3702
New Orleans, LA 70170
504-525-2200
Rasmith3@bellsouth.net

Brian J Robbins
Robbins Umeda & Fink
610 West Ash Street
-525-3990
Suite 1800
San Diego, CA 92101-3350
619-525-3990

Stephen H Kupperman
Barrasso Usdin Kupperman
  Freeman & Sarver
LL&E Tower
909 Poydras Street
Suite 1800
New Orleans, LA 70112
504-589-9700
skupperman@barrassousdin.com

William B Federman
Federman & Sherwood
120 N Robinson
Suite 2720
Oklahoma City, OK 73102
405-235-1560
wfederman@aol.com

Rover J LeBlanc
LeBlanc & Associates
8126 One Calais Avenue
Suite 2C
Baton Rough, LA 70809
225-766-5805

Fred T Isquith
Wolf Haldenstein Adler
  Freeman & Herz
279 Madison Avenue
New York, NY 10016
212-545-4600

Patrick W Pendley
Pendley Law Firm
24110 Eden Street
PO Drawer 71
Plaquemine, LA 70765-0071
225-687-6396
pwpendley@pendleylawfirm.com

Robert L Redfearn
Simon, Peragine, Smith & Redfearn
Energy Centre
1100 Poydras Street
30th Floor
New Orleans, LA 70163-3000
504-569-2030
rredfearn@spsr-law.com

for the defense

Roy C Cheatwood
Baker Donelson Bearman
 Caldwell & Berkowitz
201 St Charles Avenue
Suite 3600
New Orleans, LA 70170
504-566-5200
rcheatwood@bakerdonelson.com

Jennifer R Brannen
Akin Gump Strauss Hauer & Feld
300 W. Sixth Street
Suite 1900
Austin, TX 78701
512-499-6200
jbrabben@akingump.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

------------------------------------------------x

IN RE OCA, INC. SECURITIES
AND DERIVATIVE LITIGATION

No. 05-2165
Honorable Sarah S. Vance

------------------------------------------

This Document Relates To:
SECURITIES ACTIONS ONLY

Section: R(3)
**NOTICE OF MOTION**

------------------------------------------------x

**TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD**

  **PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law in

Support of the Motion by Robotti & Company Advisors LLC for Appointment of Lead Plaintiff

and Approval of Lead Counsel, and the Declaration of Michael E. Ponder in Support of the

Motion Motion by Robotti & Company Advisors LLC for Appointment of Lead Plaintiff and

Approval of Lead Counsel, filed herewith, plaintiff Robotti & Company Advisors LLC hereby

moves this Court, the Honorable Sarah S. Vance, United States District Judge, Eastern District of

Louisiana, United States Courthouse, 500 Polydras Street, New Orleans, Louisiana 70130, for

and Order:

  1. Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934

(the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the

"PSLRA"):

   (a) appointing Robotti & Company Advisors LLC as Lead Plaintiff for

the following Class: all persons who purchased or otherwise acquired the securities of

Orthodontic Centers of America, Inc. ("OCA" or the "Company"), during the period from

November 12, 2003 through June 7, 2005, both dates inclusive (the "Class Period"),[1]

_____

[1] Excluded from the Class are defendants; members of the individual defendant's immediate
family; officers, directors, subsidiaries or affiliates of the defendants; any entity in which any

(b) approving the selection of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel and the Law Office of Michael Ponder as Local Counsel for the Class; and

2. Granting such other relief as the Court may deem just and appropriate.

Dated: August 12, 2005

Respectfully submitted,

*Michael E. Ponder*

Michael E. Ponder
**LAW OFFICE OF MICHAEL PONDER**
2125 Quail Oak Drive
Baton Rouge, Louisiana 70808
Telephone: (225) 389-7688
Facsimile: (225) 389-5554

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**
Stanley M. Grossman
Marc I. Gross
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
Leigh R. Smoller
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

**Attorneys for Plaintiff**
**Robotti & Company Advisors LLC**

---

excluded person has a controlling interest; and legal representatives, heirs, successors or assigns of any of the foregoing.

# Exhibit A

BUS          Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class
             Jun 7 2005  18:11


Action Suit against OCA, Inc.


NEW YORK--(BUSINESS WIRE)--June 7, 2005
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
("Lerach Coughlin") (http://www.lerachlaw.com/cases/oca/) today
announced that a class action lawsuit has been commenced in the United
States District Court for the Eastern District of Louisiana on behalf
of purchasers of OCA, Inc. ("OCA" or "the Company") (NYSE:OCA) common
stock during the period between May 18, 2004 and June 7, 2005 (the
"Class Period").

    If you wish to serve as lead plaintiff, you must move the Court no
later than 60 days from today. If you wish to discuss this action or
have any questions concerning this notice or your rights or interests,
please contact plaintiff's counsel, Samuel H. Rudman or David A.
Rosenfeld of Lerach Coughlin at 800/449-4900 or 619/231-1058 or via
e-mail at wsl@lerachlaw.com. If you are a member of this class, you
can view a copy of the complaint as filed or join this class action
online at http://www.lerachlaw.com/cases/OCA/. Any member of the
purported class may move the Court to serve as lead plaintiff through
counsel of their choice, or may choose to do nothing and remain an
absent class member.

    The complaint charges OCA and certain of its officers and
directors with violations of the Securities Exchange Act of 1934. The
Company provides business services to orthodontic and pediatric dental
practices in the United States. The company provides affiliated
practices with a range of operational, purchasing, financial,
marketing, administrative, and other business services, as well as
capital and proprietary information systems.

    The Complaint alleges that, throughout the Class Period,
defendants issued numerous positive statements and filed quarterly
reports with the Securities and Exchange Commission which described
the Company's financial performance. As alleged in the Complaint,
these statements were materially false and misleading because they
failed to disclose and/or misrepresented the following adverse facts,
among others: (a) that defendants had engaged in improper accounting
practices. OCA has now admitted that its prior financial reports are
materially false and misleading as it announced that it is going to
restate its results for the first three quarters of 2004 and
potentially prior periods; (b) that certain journal entries in the
Company's general ledger were improperly recorded; (c) that certain
data provided to the Company's independent accounting firm had been
improperly changed; (d) that the Company lacked adequate internal
controls and was therefore unable to ascertain its true financial
condition; and (e) that as a result of the foregoing, the values of
the Company's patient receivables and patient revenue were materially
overstated at all relevant times.

Copyright (c) 2005

BUS        Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class
            Jun 7 2005  18:11

On June 7, 2005, the Company shocked the market when it issued a press release announcing that it was further delaying the filing of its annual report, that it intended to restate its quarterly financial statements for 2004 and that it had placed the Company's Chief Operating Officer, Bartholomew E. Palmisano Jr., on administrative leave. Specifically, the Company admitted that, among other things, it had materially overstated its patient receivables and patient revenue for the first three quarters of 2004. Following this announcement, shares of the Company's stock fell $1.53 per share, or almost 38%, to close at $2.50 per share, on unusually heavy trading volume.

Plaintiff seeks to recover damages on behalf of all purchasers of OCA common stock during the Class Period (the "Class"). The plaintiff is represented by Lerach Coughlin, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Lerach Coughlin, a 150-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. Lerach Coughlin lawyers have been responsible for more than $20 billion in aggregate recoveries. The Lerach Coughlin Web site (http://www.lerachlaw.com) has more information about the firm.

CONTACT:
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
William Lerach/Samuel H. Rudman/David A. Rosenfeld,
 800-449-4900
wsl@lerachlaw.com
-0- Jun/07/2005 22:11 GMT

Copyright (c) 2005

# Exhibit B

CERTIFICATION OF ROBOTTI & COMPANY ADVISORS LLC
PURSUANT TO FEDERAL SECURITIES LAWS

I, Robert E. Robotti, make this declaration pursuant to Section 21D(a)(2) of the Securities

exchange Act of 1934 on behalf of Robotti & Company Advisors LLC.

1.    I have reviewed a Complaint against Orthodontic Centers of America ("OCA")

consolidated under Civil Action No. 05-CV-2165 in the United States District Court for the

Eastern District of Louisiana and authorize the filing of a Complaint on behalf Robotti &

Company Advisors LLC.

2.    Robotti & Company Advisors LLC did not purchase OCA securities at the

direction of plaintiffs' counsel or in order to participate in any private action arising under Title I

of the Securities Exchange Act of 1934.

3.    Robotti & Company Advisors LLC is willing to serve as a representative party on

behalf of a class as set forth in the Complaint, including providing testimony at deposition and

trial, if necessary. I understand that the Court has the authority to select the most adequate lead

plaintiff in this action and that Pomerantz Haudek Block Grossman & Gross LLP may exercise

its discretion in determining whether to move on Robotti & Company Advisors LLC's behalf for

appointment as lead plaintiff.

4.    During the period from November 12, 2003 through June 7, 2005, Robotti &

Company Advisors LLC purchased and/or sold shares of OCA common stock as listed on

Exhibit A, hereto.

5.    During the three year period preceding the date on which this Certification

is signed, Robotti & Company Advisors LLC has not sought to serve as a representative party on

behalf of a class under the federal securities laws.

6.    Robotti & Company Advisors LLC agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond the pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on August 11, 2005.

Robert E. Robotti, President
Robotti & Company Advisors LLC

**OCA INC**
**CLASS PERIOD: NOV 12 2003 through JUNE 07 2005**

**Plaintiff: Roberti & Co**

| Purchase Date | Shares | Price | Amount | Sales Date | Shares | Price | Amount | Shares Held | Mean Avg* $1.6919 Estimated Value | Estimated Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/11/2005 | 2,300 | $4.1300 | $9,499 | | | | | | | |
| 4/6/2005 | 1,450 | $4.1300 | $5,989 | | | | | | | |
| 3/29/2005 | 1,250 | $4.2704 | $5,338 | | | | | | | |
| 3/4/2005 | 1,100 | $5.1118 | $5,623 | | | | | | | |
| 3/4/2005 | 1,150 | $5.1117 | $5,879 | | | | | | | |
| 1/14/2005 | 1,400 | $5.7293 | $8,021 | | | | | | | |
| 1/5/2005 | 2,000 | $5.8800 | $11,760 | | | | | | | |
| 1/5/2005 | 1,500 | $3.8800 | $5,820 | | | | | | | |
| 10/19/2004 | 9,000 | $4.0014 | $36,013 | | | | | | | |
| 10/18/2004 | 2,600 | $5.3450 | $13,897 | | | | | | | |
| 8/10/2004 | 350 | $7.4557 | $2,610 | | | | | | | |
| 7/16/2004 | 800 | $7.4525 | $5,962 | | | | | | | |
| 7/16/2004 | 1,000 | $7.8900 | $7,890 | | | | | | | |
| 7/7/2004 | 1,250 | $8.1192 | $10,149 | | | | | | | |
| 6/8/2004 | 800 | $4.0600 | $3,248 | | | | | | | |
| 6/3/2004 | 1,750 | $4.1811 | $7,317 | | | | | | | |
| 4/29/2004 | 525 | $9.4390 | $4,951 | | | | | | | |
| 4/19/2004 | 700 | $4.8529 | $3,397 | | | | | | | |
| 3/14/2004 | 1,300 | $4.8515 | $6,307 | | | | | | | |
| 3/11/2004 | 1,750 | $6.1814 | $10,817 | | | | | | | |
| 2/20/2004 | 1,150 | $7.5965 | $8,736 | | | | | | | |
| 1/30/2004 | 2,750 | $7.8782 | 21,665 | | | | | | | |
| 1/29/2004 | 23,300 | $7.9379 | $184,953 | | | | | | | |
| 1/5/2004 | 4,125 | $7.9942 | $32,976 | | | | | | | |
| 1/5/2004 | 2,750 | $7.9200 | $21,780 | | | | | | | |
| | 68,050 | | $440,595 | 3/29/2005 | 2,750 | $4.2600 | $11,715 | 65,300 | $110,481 | ($318,399) |

* Source: Bloomberg

damages\oca9

# Exhibit C

## POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP

Pomerantz Haudek Block Grossman & Gross LLP (the "Pomerantz Firm" or "Firm") is nationally known for its class actions on behalf of investors injured by securities fraud, as well as its antitrust, shareholder derivative, consumer, health care and ERISA litigation practice. We continue the proud tradition established over fifty years ago by the firm's founder, Abraham L. Pomerantz, known as the dean of the class action bar and one of the "pioneers who developed the class action/derivative action field."[1] The Firm has won settlements and judgments on behalf of its clients aggregating many hundreds of millions of dollars.

The Pomerantz Firm takes pride in providing high quality and personalized client service. It has a long tradition of successfully representing individual investors as well as major institutional, financial and associational clients. It has the financial and legal resources necessary to represent clients successfully against corporations defended by Wall Street's most powerful law firms, and is of the optimal size to offer each client undivided attention. Moreover, the Firm has maintained a nationally renowned reputation, and its lawyers' excellence has been recognized by courts around the country.

### A BROAD RANGE OF EXPERIENCE WITH
### AN ANCHOR IN SECURITIES CLASS ACTIONS

Focusing on the field of securities class actions, the Pomerantz Firm has successfully attacked the fraudulent activities of large corporations on behalf of victimized shareholders. Pomerantz is led by senior partner Stanley M. Grossman, a nationally prominent securities litigator, who is the former president of the National Association of Securities and Commercial Law Attorneys ("NASCAT"). He has been invited to testify before various congressional committees concerning

---

[1] *New York Law Journal,* Aug. 1, 1983.

the securities laws and related pending legislation. Mr. Grossman practices with well-respected and experienced partners, all of whom also specialize in complex class litigation, as well as dedicated and knowledgeable associates and legal assistants.

Presently, the Firm serves as lead or co-lead counsel in numerous major securities fraud class actions and price fixing and other antitrust class actions, health care class actions, and also derivative actions.

Brooklyn Law School sponsors the Abraham L. Pomerantz Lecture Series, which focuses on issues pertinent to shareholder rights.

### THE POMERANTZ FIRM'S MAJOR PRACTICE AREAS ARE:

- **Securities Litigation:** The Firm is nationally recognized as a premier securities class action litigation firm. Such actions typically concern securities whose price has been artificially inflated due to misleading statements or omissions.

- **Antitrust Litigation:** The Firm has a very active antitrust practice. These cases concern a variety of wrongful business practices in restraint of competition including price-fixing, attempted monopolization, and customer allocation. In such cases, businesses and/or individuals have been injured as a result of conduct which is anti-competitive in nature.

- **Shareholder Derivative Actions:** In these cases, where suit is brought by a shareholder on behalf of a company to recover for losses sustained by the misconduct of corporate insiders or other parties, the firm has played a substantial leadership role.

- **HMO and ERISA Litigation:** The Firm has been at the forefront in developing and prosecuting class actions designed to protect both patients and doctors from the abuses of managed care.

- **Consumer Litigation:** The Firm has also brought a number of important consumer protection, deceptive practices and automobile defect cases on behalf of our clients.

2

## SIGNIFICANT VICTORIES BY THE POMERANTZ FIRM

The Pomerantz Firm has had the privilege of serving as lead or co-lead counsel in some of the more prestigious class action and derivative litigations of the past 25 years. Below are some examples of its successes.

In *In re Charter Communications Securities Litigation*, the Pomerantz Firm, as sole lead counsel, recently reached a settlement with Charter and several of its officers for at least $144 million in cash and securities in a complex accounting manipulation case relating to Charter's alleged inflation of its customer count and operating results. As part of the settlement, Charter has additionally agreed to enact several substantive corporate governance measures. The settlement was presented to the Court in May 2005 for approval. This is a partial settlement, and the Pomerantz Firm will continue to vigorously prosecute the claims for securities fraud against other defendants. Charter is one of the top 25 securities fraud class action settlements of all time.

In *In re Livent Noteholders Securities Litigation*, the Pomerantz Firm, as co-lead counsel, was recently granted summary judgment against defendants Garth Drabinsky and Myron Gottlieb, who orchestrated a massive accounting fraud at Livent. Drabinsky and Gottlieb were ordered by the Court to pay over $23 million in damages. Together with the previous settlements in this case, the total damages awarded by the Court now exceed $40 million.

In *In re Elan Corporation, plc*, the Pomerantz Firm, as co-lead counsel, recently reached a settlement with the Irish-based pharmaceutical company for $75 million in cash. The complaint asserted accounting and disclosure claims on behalf of investors for the period February 7, 2000 through July 1, 2002. The settlement is significant, particularly in light of a recommendation by the Magistrate Judge that a substantial portion of these claims be dismissed. The settlement was also achieved despite the fact that Elan has been losing money and has a substantial debt load. The recovery represents one of the largest ever achieved against a foreign corporation.

In *In re Safety-Kleen Corp. Stockholders Litigation*, the Pomerantz Firm, as co-lead counsel, has obtained settlements of $54.5 million from the Company's outside auditor and numerous other defendants in a complicated accounting manipulation case.

In *In re Summit Metals, Inc.*, the Pomerantz Firm, as sole lead counsel, obtained a $43 million judgment and required turn over of the stock of two

3

corporations after vigorously pursuing derivative claims against a defendant who had tried to conceal his control of assets by creating a maze of shell companies.

In *In re First Executive Corporation Securities Litigation*, the Pomerantz Firm, as sole lead counsel achieved settlements worth $102 million for the class and exposed a massive securities fraud arising out of the Michael Milken debacle.

In *In re Methionine Antitrust Litigation*, the Pomerantz Firm, as co-lead counsel, obtained a $107 million settlement in a complex antitrust class action against manufacturers of methionine who were charged with fixing the price of this product during a fifteen year period.

In *In re Salomon Brothers Treasury Litigation*, the Pomerantz Firm went head to head with numerous top-line corporate defense firms and eventually achieved a $100 million settlement for the class in a complicated antitrust and securities fraud case.

In *Snyder v. Nationwide Insurance Co.*, a "vanishing premium" life insurance case, the Pomerantz Firm served as co-lead counsel. This action was settled for benefits totalling $100 million on behalf of 650,000 policyholders.

In *In re Sorbates Direct Purchaser Antitrust Litigation*, the Pomerantz Firm served as member of an Executive Committee of Plaintiffs' Counsel and helped achieve settlements of over $80 million in a major antitrust case.

In *In re National Health Laboratories, Inc. Securities*, the Pomerantz Firm, as co-lead counsel, succeeded in obtaining a $64 million recovery arising out of one of the largest ever medicare frauds.

In *Mardean Duckworth v. Country Life Insurance Co.*, the Pomerantz Firm, as co-lead counsel, helped obtain a $45 million settlement in a securities fraud action.

In *In re Boardwalk Marketplace Securities Litigation*, the Pomerantz Firm, serving as lead counsel, obtained a benefit of over $66 million -- Including a $16 million cash recovery plus a reduction in class members' indebtedness on promissory notes of over $50 million.

## WHAT COURTS HAVE SAID ABOUT THE POMERANTZ FIRM

Courts have consistently acknowledged the ability of the Pomerantz Firm to vigorously pursue the claims of class members.

In *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), where as co-lead counsel, the Pomerantz Firm helped recover a settlement valued at $100 million for defrauded life insurance policy customers, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

Judge McLaughlin in *Mercury Savings and Loan* commended the Firm for the "absolutely extraordinary job in this litigation."

In the *Boardwalk Marketplace Securities Litigation*, Judge Eginton described the Firm's services as "exemplary," commended it for its "usual fine job of lawyering...[in] an extremely complex matter," concluding that the case was "very well-handled and managed."

Judge Broderick of the Southern District of New York observed in *Nodar v. Weksel*, "that the services rendered [by the Pomerantz firm] were excellent services from the point of view of the class represented, [and] the result was an excellent result . . . ."

Judge Goettel praised the Firm in *Klein v. A.G. Becker Paribas, Inc.* for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm."

In the *Digital Securities Litigation*, Judge Young of the District of Massachusetts complimented the Firm for its "[v]ery fine lawyering."

In *In re Wiring Devices Antitrust Litigation*, where the Pomerantz Firm was again lead counsel, Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job . . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial.

In *Rauch v. Bilzerian*, the Court referred to the partners from the Pomerantz Firm who had litigated the case as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

In *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y. 2004), Judge Spatt, in granting class certification and appointing the Pomerantz Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." 2004 U.S. Dist. LEXIS 17669 at *24).

Recently, in certifying the class in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. Lexis 2005 (S.D.N.Y. 2005), Judge Lynch stated that the Pomerantz Firm had "ably and zealously represented the interests of the class."

## BIOGRAPHIES OF POMERANTZ'S LAWYERS

Brief biographies of the Firm's lawyers follow below:

## STANLEY M. GROSSMAN

Stanley M. Grossman, the senior partner of the Pomerantz Firm, was featured in an article entitled *"Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants," New York Law Journal*, August 1, 1983. He has been with the Pomerantz Firm since February 1969, and has been a member of the Firm since 1976. Throughout this period he has principally represented plaintiffs in securities and antitrust class actions. He has lectured to the profession on various occasions under the auspices of the Southern Federal Securities Institute, Columbia University School of Law, Duke University Law School, University of Arizona Law School, Brooklyn Law School, ALI-ABA, PLI, the New York State Bar Association, and the Association of the Bar of the City of New York. Mr. Grossman is the author of *"Commentary: The Social Meaning of Shareholder Suits,"* 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman has been active in numerous professional organizations. He is the former president of the National Association of Securities Attorneys ("NASCAT") -- an organization of attorneys specializing in securities class action litigation. During his tenure, he represented NASCAT in meetings with the Chairman of the Securities and Exchange Commission, members of Congress and of the Executive Branch in furnishing input and commentary on legislation which became the Private Securities Litigation Reform Act of 1995 ("PSLRA").

In the summer of 1998, at the invitation of Chairman of the Judiciary Committee Henry Hyde, Mr. Grossman testified before Congress on proposed legislation dealing with "federalization of state class actions." Subsequent to the hearings, Mr. Grossman was requested to participate with Congressional counsel in drafting proposed legislation.

In February, 2002, Mr. Grossman was requested to brief the Democratic caucus of the House Committee on Financial Services on issues pertaining to proposed legislation following the Enron debacle.

Mr. Grossman serves on New York State Comptroller Carl McCall's Advisory Committee for the New York Stock Exchange Task Force on corporate governance. He also serves as a vice president and adviser of the Institute for Law and Economic Policy ("ILEP"). ILEP is a public policy research and educational foundation established to preserve, study and enhance access to the civil justice system by all consumers.

Mr. Grossman is also a member of the United States Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago. Additionally, he is on the Advisory Committee for the Abraham L. Pomerantz Lectures at the Brooklyn Law School. Mr. Grossman is currently a member of the Judiciary Committee of the Association of the Bar of the City of New York. Previously he served on the Association's Committee on Professional and Judicial Ethics; State Courts of Superior Jurisdiction; and Trade and Antitrust.

Mr. Grossman is actively involved in local and national civic affairs. In June, 1999, he was appointed by the Association of the Bar of the City of New York to chair a special Blue Ribbon Commission on the future of the City University of New York. Upon the publication of the Commission's Report, the President of the Association described it as "insightful, measured and persuasive . . . a striking example of the very best of what this Association can do."

He is a director of the Lincoln Center Institute for the Arts in Education, as well as a member of the Appleseed Foundation, a national public interest advocacy group. In addition, he

is also a member of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Mr. Grossman's law practice is devoted to complex class actions. For example, he was the lead lawyer for plaintiffs and the class *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP)(S.D.N.Y. 1994), where he obtained a $100 million cash recovery for the class. He was also the attorney in charge of the *In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx)(C.D. Cal. 1994), another case where he negotiated a $100 million settlement for the class. Similarly, in *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 CAL (N.D. Cal. 2000), his efforts with his co-counsel resulted in an over $80 million settlement for the class.

Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants over $2 billion obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged on the record the high quality of the legal representation provided by Mr. Grossman to classes of investors. For example, in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial (Tr. 507):

> *[I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.*

Mr. Grossman has tried other complex litigations involving the securities and other federal and corporate laws.

9

### MARC I. GROSS

Marc I. Gross has been associated with the Firm since 1976 and became a partner in 1984. He graduated from New York University Law School in 1976 and received his undergraduate degree from Columbia University in 1973.

Mr. Gross has extensive experience in litigating class (securities, antitrust and consumer) and derivative actions. He is the sole or co-lead counsel in many of the Firm's major pending cases, including class actions involving fraud by analysts, and has won rulings highly favorable to plaintiffs. *See e.g. Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL).

Mr. Gross has obtained numerous large recoveries. For example, he was co-lead counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County) which resulted in a settlement valued at $100 million for defrauded life insurance policy customers. In approving the settlement, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

Mr. Gross was also co-lead counsel in *In re National Health Laboratories, Inc. Securities*, CV-92-1949-H (CM) (S.D.Cal. 1995) ($64 million recovery), *Mardean Duckworth v. Country Life Insurance Co.*, No. 98 CH 01046 (C.D.Ill. 2000) ($45 million settlement), and in *Frank v. Paul* (Centrust Savings Bank Securities Litigation), 93 Civ. 1453 (TCP) (E.D.N.Y. 1996) (over $20 million recovery).

In addition, Mr. Gross was the attorney in charge of *Texas International Securities Litigation*, where in granting class certification the Court stated:

> The performance of plaintiffs' counsel thus far leaves the Court with no doubt that plaintiffs' claims will be vigorously and satisfactorily prosecuted throughout the course of this litigation.

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case. . . . You have all worked together better than I think any case I've had that involved these extensive issues and parties and potential problems. And I for one appreciate it. And I think it shows certainly a great deal of professionalism on all your part.

Mr. Gross has also served as Chairman of Neighbors Helping Neighbors, a not-for-profit housing group based in Brooklyn, New York that is affiliated with the Neighborhood Reinvestment Corporation.

### SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and received her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude;* elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, United States Court of Appeals for the Third Circuit.

Ms. Rushd specializes in securities and antitrust class actions. She has participated in the litigation of many of the Firm's major cases, including *Kronfeld v. TWA*, No. 83 Civ. 8641

(KMW), and *In re Safety-Kleen Corp. Stockholders Litigation*, C.A. No. 3:00-CV-736-17 (D.S.C. 2004). She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.* CV-94-5105 (E.D.N.Y.) (TCP) and *Rauch v. Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J. 1991).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. Ms. Rushd also served as an Adjunct Instructor at New York Law School during the 1989 academic year and was a member of the Association of the Bar of the City of New York's Antitrust and Trade Regulation Committee.

### D. BRIAN HUFFORD

D. Brian Hufford joined Pomerantz in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. Graduating from Yale in 1985, Mr. Hufford subsequently spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the firm in 1993, he was a litigation associate at Davis Polk & Wardwell, where he worked primarily on securities and class actions. His article "Deterring Fraud vs. Avoiding the Strike Suit: Reaching An Appropriate Balance," was published in 61 *Brooklyn Law Review* 593 (Summer 1995).

At the Pomerantz Firm, Mr. Hufford has not only prosecuted a number of securities and antitrust cases, but he is also the attorney in charge of the Firm's healthcare and consumer practice. Mr. Hufford successfully argued before the New York appellate court in *Batas v.*

*Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld claims that

Prudential relied on improper procedures for the determination of medical necessity in its health

insurance contracts. Mr. Hufford also successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp.

757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties

under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical

expenditures. In addition, Mr. Hufford received a successful decision upholding claims against

United Healthcare in *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist.

LEXIS 20309 (S.D.N.Y. Oct. 23, 2002), where plaintiffs claimed that the defendant relied on an

improper database for determining "usual, customary and reasonable" fees for the purpose of

reimbursing subscribers for services received from out-of-network health care providers. Moreover,

Mr. Hufford was the partner in charge of *Addison v. American Medical Security*, Case No. CA

001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial, with

the Court finding in March 2002 that the defendant had violated Florida law by, among other things,

improperly raising health care premiums based on individual health history.

      Mr. Hufford has also written and lectured in the area of healthcare litigation. The

court in *Orthopaedic Surgery Associates of San Antonio v. Prudential Health Care Plan, Inc.*,

quoted extensively an article written by Mr. Hufford for a PLI Seminar, entitled *"Managed Care*

*Litigation: The Role of Providers,"* 1216 PLI/Corp. 487 (Nov. 2000), citing it as "instructive."

Moreover, Mr. Hufford recently testified at the New York State AFL-CIO Task Force on

Prescription Drugs: First Public Speak Out & Hearing, held on June 17, 2002, in Albany, New York,

where he discussed pending antitrust cases against pharmaceutical companies for manipulating the

prices of prescription drugs, and he served as a panelist for a forum sponsored by the American

Corporate Counsel Association entitled "Considerations in Deciding Whether to Mediate, Arbitrate or Litigate Business Disputes." Further, Mr. Hufford was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has used the Internet to investigate some of the firm's pending class actions.

In addition to representing numerous individuals serving as class representatives on behalf of the firm, Mr. Hufford has been retained by a number of significant institutions to pursue claims on their behalf, including medical associations (the American Medical Association, the Medical Society of the State of New York, the Missouri State Medical Society and the Pennsylvania Chiropractic Association), unions (New York State United Teachers, the Civil Service Employees Association, the New York State Police Investigators Association and the Organization of NYS Management Confidential Employees), and corporations (General Electric Company, U.S. Trust Company of New York, the CitiGrowth Funds, Hambrecht & Quist Healthcare Investors and Springwell Navigation Corp.), among others.

### PATRICK V. DAHLSTROM

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor-in-Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/ Public Interest Law Clinic.

Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan

14

M. Azrack, United States Magistrate Judge. He joined the Pomerantz Firm as an associate in the Fall of 1991 and became a partner in January 1996.  Mr. Dahlstrom is the resident partner in the Pomerantz Firm's Chicago Office.

Recently, in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), Mr. Dahlstrom obtained the first class certification in a federal securities case involving fraud by analysts.  Some examples of other notable litigations by Mr. Dahlstrom are *In re Safety-Kleen Stockholders Securities Litigation*, 3:00-736-17 (D. S.C.) (as co-lead counsel, Firm obtained $54.5 million settlement) and *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (VM) (S.D.N.Y.) (Firm, as sole-lead, obtained $17 million settlement, plus $23 million judgment); *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y.7) (Firm, as co-lead counsel, secured a $20 million).

Mr. Dahlstrom was also co-Class Counsel and a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (KMW) (S.D.N.Y.), where at the end of trial, the Court commented that "plaintiffs' counsel did a superb job here on behalf of the class . . . . This was a very hard fought case.  You had very able, superb opponents, and they put you to your task . . . . The trial was beautifully done and I believe very efficiently done . . . ."

## H. ADAM PRUSSIN

Mr. Prussin joined the Firm as Of Counsel in June, 2000, and became a partner in January 2002.  He graduated *cum laude* from Yale College in 1969, and after obtaining a  Masters degree from the University of Michigan in 1971, he received his J.D. degree from Harvard Law School in 1974.

15

In addition to securities litigation, Mr. Prussin has extensive experience in derivative actions. He has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including "Termination of Derivative Suits Against Directors on Business Judgement Grounds: From *Zapata* to *Aronson*" published in 39 The Business Lawyer 1503, 1984; "Dismissal of Derivative Actions Under the Business Judgement Rule: *Zapata* One Year Later," published in 38 *The Business Lawyer* 401, 1983; and "The Business Judgement Rule and Shareholder Derivative Actions: Viva *Zapata*?," published in 37 *The Business Lawyer* 27, 1981.

Mr. Prussin was special litigation counsel in *Summit Metals, Inc. v. Gray*, a derivative action which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. He was also one of the lead lawyers in *re Livent Noteholders Securities Litigation* Mr. Prussin is co-lead counsel in several of the Firm's pending derivative actions.

Before joining the Firm, Mr. Prussin was a named partner in Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared repeatedly before the Delaware Supreme Court.

Prior to joining Silverman, Harnes in 1994, Mr. Prussin was of counsel to Weil, Gotshal & Manges. While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

16

### RUSSEL N. JACOBSON

Russel N. Jacobson received an A.B. *magna cum laude* from Harvard College in 1984, where he was elected to Phi Beta Kappa, and a J.D. *magna cum laude* from Harvard Law School in 1987. He joined the Firm as a partner in 2004.

Mr. Jacobson began his legal career by serving as a law clerk to then Judge (now Justice) Anthony M. Kennedy on the U.S. Court of Appeals for the Ninth Circuit. Thereafter, he was a litigation associate at Dickstein Shapiro Morin & Oshinsky in Washington, D.C., where he was engaged primarily in the defense of white-collar criminal and securities fraud matters, and in complex business litigation.

Mr. Jacobson then served as a federal prosecutor for more than a decade. From 1997 until he joined the Firm, Mr. Jacobson was an Assistant United States Attorney with the United States Attorney's Office for the District of New Jersey. There he investigated and prosecuted diverse federal criminal cases, including international money laundering offenses, securities fraud, other frauds, tax offenses, and additional federal crimes. From 1991 through 1997, Mr. Jacobson was a Trial Attorney with the Fraud Section of the Criminal Division at the United States Department of Justice in Washington, D.C. While at the Fraud Section, Mr. Jacobson investigated and prosecuted complex business crimes, including financial institution fraud, securities fraud, and other white-collar offenses. Mr. Jacobson also served in 1993 as a Special Assistant United States Attorney with the United States Attorney's Office for the Eastern District of Virginia. During his service as a federal prosecutor, Mr. Jacobson conducted numerous trials, and received many awards in recognition of the excellence of his work.

### ROBERT J. AXELROD

Robert J. Axelrod joined the Firm upon his graduation from Brooklyn Law School in 1995, where he served as Executive Notes and Comments Editor of the Brooklyn Law Review. Mr. Axelrod practices securities, antitrust, and healthcare litigation. As a member of the Firm's insurance practice group, Mr. Axelrod currently is prosecuting actions on behalf of clients including the American Medical Association, the American Dental Association, the Medical Society of the State of New York, and the New York State Unified Teachers, against such insurers as United Healthcare Corporation, Aetna, Inc., Wellpoint, CIGNA, Metropolitan Life Insurance Company, Health Net, Inc., Guardian Life Insurance Company, First American Title Insurance Company, and Mutual of Omaha Insurance Company, among others. Mr. Axelrod was on the successful trial team in the action against American Medical Security. Additional healthcare cases that Mr. Axelrod has litigated include *Batas v. Prudential, American Medical Ass'n et al. v. United Healthcare Corp. et al.*, and *Wachtel v. Guardian Life Ins. Co.* Among the securities and antitrust actions he has prosecuted are *Cross v. Dickstein Partners, Inc., In re Schick Technologies, Inc. Securities Litigation, In re Nasdaq Market Makers Antitrust Litigation,* and *In re Flat Glass Antitrust Litigation.*

Mr. Axelrod's presentations to institutional investors include speeches before public pension fund trustees on the topics "Corporate Governance: Ensuring Investor Confidence," "Improving Board Governance: Policies and Procedures," and "Surviving the Scandals: Implications of Late Trading, Market Timing, and the New Mutual Fund Regulatory Regime." He is a member of the National Association of Public Pension Attorneys (NAPPA), and serves on the advisory board of the Louisiana Trustee Education Council (LATEC).

18

Mr. Axelrod is also a member of the Association of the Bar of the City of New York, the New York State Bar Association, and the American Bar Association, and serves as a member of the Class Action Committee of the New York State Bar Association. Mr. Axelrod is a member of the Temple University College of Liberal Arts Alumni Board, and served as Cubmaster of Cub Scout Pack 225 in Centerport/Greenlawn, New York.

### CHERYL HAMER MACKELL

Cheryl Hamer Mackell joined the Firm in February 2003 to head up its Washington, D.C. office. She is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University.

Before joining the Pomerantz Firm, Ms. Mackell served as of counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for 20 years, she has litigated, at both the State and Federal levels, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases. She has authored numerous criminal writs and appeals.

She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998.

Ms. Mackell has served as vice-chair of Freeing the Innocent Imprisoned Committee, chair and vice-chair of the Death Penalty Litigation Committee, Liaison to American Bar Association, and a member of the Nominating Committee of the National Association of Criminal

19

Defense Lawyers. She has also served on numerous non-profit boards of directors including Shelter From the Storm, the Southern California Coalition on Battered Women and the Native American Preparatory School and is a former member of Hollywood Women's Political Committee. She is a member of the American Bar Association's Litigation and Individual Rights Sections, the Corporate, Finance & Securities Law Section of the District of Columbia Bar, the National Association of Public Pension Attorneys and the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

## MARY E. NEU-STOPPELMAN

Mary E. Neu-Stoppelman became Of Counsel to the Pomerantz Firm in 2003. She graduated *cum laude* from Tulane University Law School in 1988 and received her Bachelors in Business (in 1980) and Education (in 1981) from Indiana University.

Ms. Neu-Stoppelman focuses her practice on securities, antitrust and healthcare class actions. She is a member of the Association of the Bar of the City of New York.

## WILLIAM P. BODKIN

William P. Bodkin graduated cum laude from Brooklyn Law School in 2001. While in law school, Mr. Bodkin served as a law clerk intern to the Hon. Richard M. Berman, U.S.D.J., S.D.N.Y.

Mr. Bodkin began his career as an associate of LeBoeuf, Lamb, Greene and MacRae, where he specialized in reinsurance dispute resolution and financial institution market conduct defense. During his tenure at LeBoeuf, Mr. Bodkin co-authored the article "Caveat Reinsurer:

Reinsuring Punitive Damages Under ECO Clauses," which appeared in the Journal Of Tort & Insurance Law, Vol. 37, No.1 (Fall 2001).

In addition to an understanding of complex financial transactions, Mr. Bodkin brings an insider's knowledge of the financial industry to his practice in Securities Litigation. During the mid-1990's, Mr. Bodkin held his NASD Series 7, 63, and 65, along with New York State Life, Health, and Variable Annuity Licenses while serving as a licensed representative in the financial services industry.

### JASON S. COWART

Jason S. Cowart graduated *cum laude* from Northwestern University Law School in 1999. While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen. Prior to joining Pomerantz, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years. During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000).

### LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar became associated with the Firm in January, 2002, and is practicing in the Chicago office. She graduated from Chicago-Kent College of Law in 1996. Upon

her graduation, Ms. Handelman Smollar spent the next 5 years specializing in complex litigation, handling a broad variety of matters.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "Shareholder Derivative Suits and Stockholder Litigation in Illinois " published in IICLE Chancery and Special Remedies 2004 Practice Handbook. She is also a member of the Illinois State Bar Association.

### JEREMY A. LIEBERMAN

Jeremy A. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman began his career at Chadbourne & Parke LLP as a litigation associate, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman became associated with the firm in August 2004. He is a member of the New York State Bar Association.

### MURIELLE STEVEN WALSH

Murielle Steven Walsh graduated *cum laude* from New York Law School in 1996, where she received the Irving Mariash Scholarship. Ms. Steven Walsh specializes in securities litigation. She is a member of the New York State Bar Association Committee on Media Law. Ms. Steven Walsh is admitted to the New York bar and the United States District Court for the Southern District of New York.

## SUSAN J. WEISWASSER

Susan J. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, Ms. Weiswasser served as a law clerk intern to the Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York. Ms. Weiswasser also served as a legal intern with the New York State Capital Defender Office.

Ms. Weiswasser focuses her practice on health insurance and other class action insurance litigation.