UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE OCA, INC. SECURITIES
AND DERIVATIVE LITIGATION

No. 05-2165

SECTION: R(3)

JUDGE VANCE

**THIS DOCUMENT RELATES
TO: ALL CASES**

### ORDER AND REASONS

Before the Court is Cannell Capital, LLC's motion for reconsideration of this Court's November 18, 2005 order appointing Samuel Boodman as the lead plaintiff in the securities cases. For the following reasons, the Court DENIES Cannell Capital's motion for reconsideration.

By order dated November 18, 2005, this Court appointed a lead plaintiff in the consolidated securities cases currently pending before it pursuant to the provisions of the Private Securities Litigation Reform Act of 1995. See 15 U.S.C. § 78u-4. Under the PSLRA, the Court is directed to appoint as lead plaintiff the "most adequate plaintiff," defined as "the member

or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). The statute creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" that (i) has moved for appointment as lead plaintiff; (ii) has "the largest financial interest in the relief sought by the class;" and (iii) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). Once established, this presumption can be rebutted by proof that the presumptive plaintiff "will not fairly and adequately protect the interests of the class[,] or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Applying these statutory criteria, the Court determined that Samuel Boodman was the "most adequate plaintiff" under the PSLRA. The Court found that, although Cannell Capital purported to have the greatest financial interest of any of the lead plaintiff candidates,[1] it was not the statutory most adequate plaintiff

---

[1] The Court assumed that Cannell Capital had the greatest financial interest of any of the lead plaintiff candidates on the basis of its asserted loss of $2,649,791. (*See* Nov. 18 Order at 10-11) ("Cannell Capital's purported loss of $2,649,791 is almost $2.2 million larger than the next-largest purported loss . . . ."). Because the Court finds no basis for reconsideration of

2

because it might be subject to the unique defense of loss causation and because it had a potential conflict that might prevent it from fairly and adequately representing the interests of the class as a whole.

Cannell Capital seeks reconsideration of the November 18, 2005 order on three grounds: (1) that the Court was incorrect in determining that Cannell Capital is subject to a "unique

---

its November 18 order, it will continue to assume that Cannell Capital has the largest financial interest in the litigation. Were reconsideration appropriate, however, the Court would be obliged to determine whether Cannell Capital actually has the largest financial interest in the litigation. It is notable that, in framing its asserted loss, Cannell Capital relies on a class period beginning November 13, 2003. This class period was alleged in only one of the 14 securities complaints consolidated in this litigation, while each of the other 13 complaints alleged a class period beginning May 18, 2004. That complaint, *Hattie v. OCA, Inc.*, No. 05-3649 (E.D. La. filed Aug. 2, 2005), was filed by Cannell Capital's proposed liaison counsel nearly two months after the initial complaint and just ten days before the lead plaintiff motions were filed. Although the Court need not determine whether the class period alleged in the *Hattie* complaint or that alleged in the other 13 complaints should control for purposes of this motion, it does point out that Cannell Capital's asserted loss might be nonexistent if the shorter class period were applied. Using the shorter class period and accounting for Cannell Capital's trades using the Last-In, First-Out methodology, the Court calculates that Cannell Capital might actually show a profit on its class period purchases and sales of OCA stock. *See, e.g., In re eSpeed Inc. Sec. Litig.*, No. 05 Civ.2091(SAS), 2005 WL 1653933, at *4 (S.D.N.Y. July 13, 2005) ("[M]ore recently, courts have preferred LIFO and have 'generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.'" (quoting *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003))).

defense"; (2) that the Court incorrectly determined that Cannell Capital had taken a position adverse to the interests of any members of the potential class; and (3) that the Court improperly compared Cannell Capital with the other lead plaintiff movants on a basis other than their respective financial interests. Although Cannell Capital's motion warrants some clarification of the Court's November 18 order, none of its arguments persuades the Court that reconsideration is appropriate.

As a preliminary matter, Cannell Capital seeks reconsideration under Federal Rule of Civil Procedure 60(b). Rule 60(b), which by its terms applies only to "final" judgments and orders, is inapplicable here, as the Court's appointment of a lead plaintiff is not a final order. *See, e.g., Leverton v. Pope*, 100 Fed. Appx. 263, 265 (5th Cir. 2004); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 356 (5th Cir. 1989); *Liljeberg Enters. Int'l, LLC v. Vista Hosp. of Baton Rouge, Inc.*, No. Civ.A. 04-2780, 2004 WL 2725965, at *1 (E.D. La. Nov. 24, 2004). Nonetheless, the Court can consider Cannell Capital's motion because it has the inherent power to reconsider or modify its interlocutory orders. *See Xerox Corp.*, 888 F.2d at 356; *Liljeberg Enters. Int'l*, 2004 WL 2725965, at *1.

Cannell Capital first argues that the Court incorrectly found that it was subject to a "unique defense" concerning loss

causation.  Cannell Capital's primary argument on this point is that a potential loss causation defense based on Cannell Capital's sale of all of its OCA shares before the end of the class period would not be "unique" to it because some 41 percent of available OCA shares were traded between March 18, 2005, the day after OCA announced that it would delay the filing of its 2004 Form 10-K, and the end of the class period on June 7, 2005. Accordingly, Cannell Capital asserts, any party appointed lead plaintiff in this action will be forced to address a loss causation defense asserted against plaintiffs who sold OCA shares after March 17, 2005 but before the end of the class period.

That the question of whether plaintiffs can establish loss causation based on OCA's March 17, 2005 announcement may inevitably be an issue in this litigation does not, however, foreclose the conclusion that this issue renders Cannell Capital an inadequate lead plaintiff.  First, while it is no doubt likely that some number of putative class members in addition to Cannell Capital sold all of their OCA shares between March 18, 2005 and the end of the class period, the loss causation defense need not be "unique" in the sense that it applies to Cannell Capital and Cannell Capital only in order to support a finding that Cannell Capital is an inadequate or atypical lead plaintiff.  *See In re Carreker Corp. Sec. Litig.*, No. 3:03-CV-0250-M, 2003 U.S. Dist.

LEXIS 25988, at *7-9 (N.D. Tex. Aug. 14, 2003) ("in and out" trader inadequate because of unique loss causation defense despite argument that 60 percent of class members were "in and out" traders); *see also Kas v. Fin. Gen. Bankshares, Inc.*, 105 F.R.D. 453, 456, 461-62 (D.D.C. 1985) (finding, in case involving merger, unique defense "which would be peculiar only to the small subclass which voted against the merger" when approximately 30 percent of shareholders voted against merger).

Second, Cannell Capital's argument on this point overstates the degree to which the loss causation issue impacts the putative class. The Court will not presume that each plaintiff who sold OCA shares after March 17, 2005 but before the end of the class period sold *all* of his or her shares during that period, as Cannell Capital did. For those who did not, the loss causation issue surrounding OCA's March 17, 2005 announcement might affect the amount of damages that they can recover, but it would in no circumstance be fatal to their claims, as it could be with Cannell Capital. Were Cannell Capital unable to prevail on the loss causation issue, those class members who held OCA stock at the end of the class period (a group that includes not only the holders of the 59 percent of OCA shares that were not traded between March 18, 2005 and June 7, 2005, but also the purchasers of any shares that were traded during that period) would be left

with a lead plaintiff who could not state a claim against the defendants.  It is this combination of factors, that Cannell Capital sold all of its shares before the end of the class period and that the vast majority of other class members did not, that makes loss causation a unique defense that prevents Cannell Capital from adequately representing the class.  *See Carreker Corp.*, 2003 U.S. Dist. LEXIS 25988, at *7-9 (finding unique loss causation defense when proposed lead plaintiff might be "subject to a unique no damage defense that cannot be asserted against those who still held Carreker stock at the end of the class period"); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 n.23 (E.D. Va. 2000) (lead plaintiff candidate potentially subject to "unique defenses based on the timing of its loss" when its alleged loss occurred before that of "average member of the class"); *see also In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003) (finding unique loss causation defense; noting that "[w]ithout causation, West Virginia cannot prevail on its claims. . . . [and] would therefore have no standing to pursue its claims against the Defendants").

Nor is the Court persuaded by Cannell Capital's assertion that it is significant that none of the cases cited in the Court's November 18, 2005 order involved a partial disclosure of

fraud prior to the end of the class period.  To some degree, this argument simply presumes Cannell Capital's desired conclusion that OCA's March 17, 2005 announcement was a partial disclosure of the alleged fraud.  Stripped of that presumption, Cannell Capital's argument is without merit.  The issue in each of those cases was the same issue presented here:  whether the existence of an arguable defense of loss causation against a party who sold all of its shares before the end of the class period can render that party inadequate to serve as lead plaintiff.  Thus, having considered Cannell Capital's arguments, the Court declines to reconsider its conclusion that Cannell Capital is an inadequate lead plaintiff because it is subject to a unique defense for lack of loss causation.

    Cannell Capital next argues that the Court incorrectly found that Cannell Capital's interests in this litigation potentially conflicted with those of class members who purchased OCA shares after March 17, 2005.  This argument requires little comment.  In its responsive brief on the original lead plaintiff motion, Cannell Capital argued that any plaintiff who purchased OCA shares after March 17, 2005 was inadequate to serve as lead plaintiff because it would have a conflict of interest with plaintiffs who purchased OCA stock before that date.  Cannell Capital cannot have it both ways.  Taking its earlier argument at

face value, it is difficult to see how Cannell Capital, which sold all of its OCA shares between March 17, 2005 and the end of the class period, could then adequately represent those who purchased shares during that period.  Accordingly, the Court finds that reconsideration is inappropriate on this point.

Finally, Cannell Capital argues that the Court improperly compared it to other lead plaintiff candidates on a basis other than their respective financial interests.  In support of this argument, Cannell Capital cites the following passage from the Court's November 18 order:  "the fact remains that Cannell Capital faces issues concerning loss causation that the other lead plaintiff candidates do not."  (*See* Nov. 18 Order at 12).

Cannell Capital is correct that courts appointing lead plaintiffs under the PSLRA should not compare the relative adequacy of the various lead plaintiff candidates.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  Notwithstanding the Court's statement that other lead plaintiff candidates did not face the same loss causation issues as Cannell Capital, however, the Court's decision turned not on whether Cannell Capital was more or less adequate than any other lead plaintiff, but on whether Cannell Capital would be an adequate lead plaintiff.  As the Court stated in the next sentence of its November 18 order, "Those issues," *i.e.*, the loss causation

issues, "are substantial enough to render Cannell Capital inadequate to serve as the lead plaintiff in this action." (*See* Nov. 18 Order at 12). Any comparison of the lead plaintiff candidates was unintended and did not affect the outcome of the motion.[2] This argument does not therefore provide a basis for reconsideration of the November 18, 2005 order.

For the reasons stated above, the Court DENIES Cannell Capital's motion for reconsideration.

New Orleans, Louisiana, this __21st__ day of December, 2005.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[2] Moreover, all references to the "most adequate plaintiff" in the Court's November 18 order refer to that term as defined in the PSLRA.